MEYER BROTHERS DRUG COMPANY, Plaintiff in Error, v. CHARLES T. C. WHITE, Defendant; G. E. SOR-RELL, Interpleader, Defendant in Error.

St. Louis Court of Appeals, March 24, 1896.

1. Sale: SUFFICIENCY OF DELIVERY AS TO CREDITORS OF VENDOR: LIVE STOCK. *Held,* in the course of discussion, that when live stock on a farm is sold, the simple transfer of it from one pasture on the farm to another will not satisfy the requirements of the statute for delivery within a reasonable time.

Drug Co. v. White.

2. ———: EFFECT OF AGREEMENT FOR RETENTION OF CUSTODY BY VENDOR. An intention or purpose to leave property which has been sold in the possession of the vendor for an indefinite period is an evidentiary fact which the jury may consider in determining the good faith of the sale, but it is not conclusive evidence of bad faith.

*Error to the Monroe Circuit Court.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

*T. T. Rodes, R. N. Bodine,* and *J. H. Zumbalen* for plaintiff in error.

(1) The court erred in refusing to declare, as a matter of law, that the reasonable time for delivery of all the property had expired when the attachment was levied. Bump on Fraudulent Conveyances [3 Ed.], 135, 164, 165, 166; *Claflin v. Rosenberg,* 42 Mo. 439; *State ex rel. v. Hall,* 45 Mo. App. 298; *Seymour v. O'Keefe,* 44 Conn. 128; *Wright v. McCormick,* 67 Mo. 426; *Stern v. Henley,* 68 Mo. 262; *State ex rel. v. Goetz,* 33 S. W. Rep. 161. (2) Instruction number 4, given by the court, should not have been given, as it practically told the jury that there could be no change of possession so long as the animals were not in condition to be moved. (3) The sale was fraudulent and void *in toto,* notwithstanding a reasonable time for delivery was not allowed as to some of the property, because it clearly appeared that the vendee intended not to take possession even after the expiration of a reasonable time. *Boland v. Ross,* 120 Mo. 208; *Simon-Gregory Dry Goods Co. v. McMahan,* 61 Mo. App. 507; Jones on Chattel Mortgages, sec. 350.

*J. H. Whitecotton* and *Thomas H. Bacon* for defendant in error.

BIGGS, J.—The defendant in error filed his interplea in the circuit court, claiming to be the owner of

certain personal property which had been seized under
a writ of attachment in favor of the plaintiff in error
and against the defendant White. The property was
levied upon under the writ on the third day of June,
1893, and it consisted of horses, cattle, hogs, sheep,
etc., which at the time of the levy were on a farm
owned or occupied by White. The defendant in error
claimed the property under a purchase from White on
the eighth day of May, 1893, for which a bill of sale
was executed and acknowledged by White on that day
and recorded on the first day of June. The chief mat-
ters of defense were that there was no change in the
possession of the property, and that the alleged pur-
chase was fraudulent in fact. At the close of the
evidence the plaintiff in error asked the court to instruct
the jury to find the issues for it. This the court
refused to do, but on its own motion instructed the
jury to find for plaintiff in error as to all of the prop-
erty "except as to the ewes about to drop their lambs,
and the young lambs, and as to the sows about to drop
their pigs, and the young pigs, and the sows with
young pigs and the ewes with young lambs." The
court further instructed the jury that, if they found
from the evidence that White was indebted to Sorrell,
and that to collect his debt Sorrell in good faith bought
the property at a reasonable valuation and took no
more than was necessary for the payment of his debt,
and that the attachment was levied upon the excepted
property before the expiration of a reasonable time for
its delivery, regard being had to its condition and sit-
uation, then the issues should be found for Sorrell.
To these instructions the plaintiff in error excepted and
still excepts. The jury found the issues for the defend-
ant in error as to the excepted property, and judgment
was rendered accordingly, from which judgment the
plaintiff has prosecuted the present writ of error.

One of the objections urged against the instruction is that, when applied to the evidence, a removal of the excepted property from the farm of White is made necessary in order to effect a delivery, thereby excluding other acts or means of delivery which could have been resorted to and which would have satisfied the statute. The evidence of the interpleader was to the effect that, prior to the levy of the attachment, the removal of the ewes and lambs and the sows and pigs from the farm would probably have been attended with bad results. The argument in support of the objection seems to proceed upon the idea that the animals in question might have been removed to some other portion of the farm or placed in a separate inclosure, and in this way the requirements of the statute would have been satisfied. We can conceive of circumstances under which there might be a delivery and change of possession of live stock, such as the statute requires, without its removal from the premises of the vendor, but there was no attempt to show that such a thing was feasible in this particular sale, which is a sufficient answer to the appellant's argument. To effect such a delivery it would certainly be necessary to put the animals into a barn, or a closed lot, with some sort of indication or notice to the public of the change in the possession. This could not have been safely done with the sows and ewes here in controversy, as their condition was such that they should run at large and get the benefit of the grass, which probably accounts for the failure of the appellant to introduce any evidence on the subject. To have simply changed them from one pasture to another (if there was more than one pasture on the farm) would certainly have not satisfied the statute.

As to the second assignment the contention is that the evidence conclusively shows that the interpleader never intended to comply with the terms of the statute

in reference to any of the property; that the arrangement was to leave it in the possession of White indefinitely, and that this of itself rendered the sale fraudulent in fact, and for this reason the circuit court ought to have directed the issues to be found for the plaintiff as to all of the property. An intention or purpose to leave property in possession of the vendor for an indefinite period is an evidential fact which a jury may consider in determining the good faith of a sale, but we have found no case that holds it to be conclusive evidence of bad faith. There is abundant testimony in the record tending to prove that White was indebted to interpleader; that the property in question was taken in discharge of the debt, and that no more property was taken than was necessary to pay the debt. Concerning the possession, the proof is that at the time of the purchase the interpleader had determined to remove from Kansas, where he had lived for many years; that his purpose was to locate in what was known as the Cherokee Strip, which was then about to be opened for settlement; that he had packed his household goods; that his family had gone to visit relatives in the state of Illinois, and that, on account of this condition in his affairs, it was agreed between him and White that the property should remain on the farm until he could locate his future home. In the instruction given the jury was required to find that White owed the interpleader, that the purchase was made in good faith, and that no more property was taken than was necessary to pay the debt, and that the property had been seized under the writ of attachment before a reasonable time for a change of possession had expired. Thus every material fact necessary to a valid purchase was submitted to the jury, and the plaintiff had full opportunity to urge any fact or circumstance

in evidence which had a tendency to impeach the good faith of the transaction.

Our conclusion is that the cause was fairly tried, and the judgment of the circuit court must be affirmed. It is so ordered. All the judges concur.